IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. CR-16-119-R-17 |
| NIKO DEANDREA' DAVIS, | ) |  |
| Defendant. | ) |  |

## ORDER

Before the Court is Defendant Niko Davis's Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, Doc. 1207, which he supplemented with additional grounds for relief, Doc. 1315.[1]

At the outset, the Court denies Defendant's request for an extension to reply to the Government's response to his Motion, Doc. 1596. Defendant seeks a third extension because the Court has not provided him legal documents to assist him in filing a reply—"preliminary and sentencing transcripts," the "criminal complaint and . . . complaint affidavit," and the indictment. Doc. 1596; *see* Docs. 1571, 1424, 1522. Defendant has not shown that his Section 2255 Motion "is not frivolous" or that the documents are "needed to decide the issue[s] presented." 28 U.S.C. § 753(f); *see also United States v. Lewis*, 37 F.3d 1510 (10th Cir. 1994) (unpublished) (applying § 753(f) standard to request for pretrial records). A generalized desire "to have an adequate defen[s]e" is insufficient. Doc. 1596.

---

[1] *See also* Docs. 1208, 1244 (clarifying Defendant's intent to proceed under Section 2255).

1

Moving to the merits and construing Mr. Davis's pro se motion liberally, the Court finds nine potential grounds for ineffective assistance of his counsel, Edmond Geary. The Court denies the Motion for the reasons discussed herein.

## I. Background

The Government arrested Defendant Niko Davis on July 14, 2016, as part of a criminal complaint charging 19 defendants with various drug trafficking crimes. Docs. 1, 15. He appeared before U.S. Magistrate Judge Suzanne Mitchell that same day, at which point she ordered him temporarily detained and appointed Ed Geary to represent him. Docs. 82–84. On July 21, 2016, Judge Mitchell found probable cause for the complaint against Defendant and ordered his detention pending trial. Docs. 187, 224. The Court granted the Government's motion for an extension of time to indict Defendant on August 9, 2016, and the Government filed a superseding indictment on September 6, 2016. Docs. 244, 251, 289. When Defendant was arraigned on this indictment on September 16, 2016, the trial was set for the November 2016 jury trial docket, but on October 12, 2016, the Court declared the case complex and continued the jury trial to the April 2017 docket. Docs. 350, 411.

Defendant first indicated his dissatisfaction with Mr. Geary's representation on November 7, 2016, when he wrote to Judge Mitchell that he "would like to fire [his] attorney." Doc. 457. Defendant alleged that Mr. Geary was not "defending [Mr. Davis] to the best of his power," he would not let Mr. Davis know which motions to file, and he did not ask enough questions at the preliminary hearing; they were "bumping heads not seeing eye to eye" and Defendant wanted Mr. Jack Dempsey Pointer or Ms. Jacquelyn L. Ford to represent him. *Id.* Defendant reversed course a week later and wrote to Judge Mitchell that

he did not want to fire his attorney and they "worked out [their] problems." Doc. 472. Then on November 25, 2016, Defendant reversed course again and wrote that he "would like to fire [his] attorney Edmond Geary on the grounds of insufficient counsel." Doc. 479. Defendant again named the two attorneys he would prefer to represent him and objected to Mr. Geary's unauthorized agreement to "Jack Fisher['s] motion to continue" the indictment date. *Id.* He also accused Mr. Geary of working for the U.S. Attorney. *Id.*

The Court set a hearing on Defendant's request for new counsel, but deferred the hearing until it could consider Mr. Geary's December 5, 2016, motion for an order of competency to stand trial. Docs. 487–88. Based on Mr. Geary's difficulty communicating and working with Defendant[2]—as well as Defendant's family's representations to Mr. Geary

---

[2] 5. Since his appointment in this case, undersigned counsel has proceeded to investigate this matter and prepare a defense. However, after several meetings with Mr. Davis, it has become evident to undersigned counsel that Mr. Davis does not have the present ability to consult with counsel with a reasonable degree of rational understanding so as to be able to assist in the preparation of a defense. Mr. Davis has insisted on defending his case in a manner that is not based in reality, and he rejects consideration of any different approaches. He consistently disregards the legal analyses and descriptions of evidence which counsel has given him. Mr. Davis has expressed disinterest in knowing about the Title III recordings and other evidence the government intends to use at trial. Instead, Mr. Davis has insisted on pursuing narrow theories he has composed which include peculiar interpretations of law and fact, which he insists will win his case. Mr. Davis refuses to explain these interpretations to counsel in detail when counsel has asked to understand. Mr. Davis reacts with impatience and hostility when counsel asks for explanations or asks Mr. Davis to consider negative possibilities in discussion.

6. Mr. Davis has insisted on particular meanings for certain legal terms and procedures that are bizarre, and when counsel insists these interpretations are erroneous, Mr. Davis accuses counsel of working for the prosecution. Mr. Davis has blamed counsel for Mr. Davis being detained, insists he never should have been detained, and Mr. Davis has questioned counsel's loyalty since he was held detained. Mr. Davis has also questioned the impartiality of Magistrate Judge Mitchell ever since she ordered Mr. Davis detained. Mr. Davis has read certain court decisions which he interprets to his benefit, but Mr. Davis will not entertain any question about his interpretation of these decisions; and he is suspicious of any questioning of his interpretations and opinions.

7. When counsel has requested clarification from Mr. Davis so that counsel can reduce Mr. Davis's theories into the form of a motion to the Court, Mr. Davis has stated that no motion is necessary, that Mr. Davis's analyses are self-evident and that counsel is trying to interfere with Mr. Davis's ideas for his defense.

Motion for Determination of Competency, Doc. 487.

that Defendant has a history of learning and communication problems, impulsiveness, and attention deficit disorder—Mr. Geary requested that the Court order a mental competency evaluation to determine if he has the capacity to make rational decisions, assist counsel, or to waive the right to counsel. Doc. 487. The Court ordered a psychiatric evaluation on December 6, 2016. Doc. 489.

Defendant filed a filed a motion to substitute counsel on February 23, 2017, repeating his desire to proceed pro se, but asking that counsel be appointed to assist him. Doc. 695. The Court held a hearing the following week and found, based on an undisputed competency evaluation, that Defendant was competent to stand trial. February 28, 2017, Hearing Transcript, Doc. 1285, at 2–3. The Court heard from Mr. Davis and Mr. Geary—Mr. Davis repeated many of his prior complaints regarding Mr. Geary's representation and Mr. Geary did the same regarding complaints laid out in the competency motion. *Id.* at 3–8; *see* Docs. 457, 479, 487. The Court was "entirely satisfied that [Mr. Geary] is competent counsel and that he is fully able to give [Mr. Davis] good advice and to represent [him]." Doc. 1285, at 8. Thus, after explaining the dangers of proceeding pro se in a complex case with such a high potential sentence, the Court granted Defendant's request to continue pro se and appointed Mr. Geary as standby counsel. *Id.* at 8–15.

From April 13–May 11, 2017, Defendant filed pro se motions seeking discovery (Doc. 768, granted in part at Doc. 837), a private investigator (Doc. 769, denied at Doc. 780), suppression of wiretaps (Docs. 843, 852), suppression of Special Agent Jamie Walker's testimony and affidavits (Docs. 844, 866), a Franks Hearing (Doc. 851), and severance of his trial from that of the other defendants (Doc. 855).

Defendant pled guilty on June 21, 2017 (Docs. 978–83) to distributing methamphetamine, but following a series of Defendant's flip-flopping letters regarding which drug he sold (Docs. 1006, 1025, 1033, 1037), the Court allowed him to withdraw the plea and to enter into a new plea agreement on August 22, 2017, to one count of distributing heroin in violation of 21 U.S.C. § 841(a)(1). *See* Docs. 1072–78. Mr. Geary represented Defendant at the second plea hearing and beyond. Doc. 1072. The Court sentenced Mr. Davis on November 13, 2017, to 84 months imprisonment and four years of supervised release. Docs. 1175, 1179. Defendant filed his Section 2255 Motion on November 24, 2017, after which the Government responded and included an affidavit from Mr. Geary defending his representation of Mr. Davis. Doc. 1207, Doc. 1322-1; *see also* Doc. 1315.

## II. Discussion

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Any successful claim of ineffective assistance of counsel must satisfy the two-pronged test laid out in *Strickland v. Washington*, 466 U.S. 668, 697 (1984). First, a defendant must show that his counsel's performance was deficient—it "fell below an objective standard of reasonableness." *Id.* at 688. This requires overcoming the strong presumption that counsel's performance fell within the broad range of reasonable professional conduct. *Id.* at 689. Conclusory allegations or vague descriptions of the alleged deficient performance will not suffice. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

Second, the defendant must show that his counsel's deficient performance actually prejudiced his defense. In other words, a defendant "must show there is a reasonable

5

probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Prejudice in the guilty plea context means "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Failure to demonstrate either prong is fatal to a petitioner's claim for ineffective assistance of counsel. *Smith v. Robbins,* 528 U.S. 259, 286 n. 14 (2000).

Once a defendant waives the right to counsel and continues pro se, he "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (quoting *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)); *see also McKaskle*, 465 U.S. at 183 ("A defendant does not have a constitutional right to choreograph special appearances by counsel."). Because "claims of ineffective assistance of standby counsel cannot be brought by *pro se* defendants," the Court focuses on the time Mr. Geary represented Defendant from July 14, 2016, through February 28, 2017, when Defendant switched to pro se, and then again from the second plea hearing on August 22, 2017, until sentencing on November 13, 2017. *United States v. Dotson*, 28 F. App'x 801, 802 (10th Cir. 2001) (unpublished).

1. **Unauthorized agreement to continuance, violation of attorney-client privilege, and failure to challenge an untimely arraignment**

Defendant fails to satisfy either *Strickland* prong regarding his allegations that Mr. Geary (1) agreed to an unauthorized continuance, (2) "violated attorney-client privilege when he agreed to a[n] email from the government without [his] knowledge and without [his] consent," and (3) failed to challenge his untimely arraignment on the second superseding indictment. Doc. 1207, at 3; Doc. 1315, at 1. It appears Defendant is referring

to an email between the Government and defense attorneys on July 27, 2016, discussing an offer by defense attorney Jack Fisher to delay the indictment. Doc. 1207-1.

Mr. Geary acknowledges that Defendant initially objected to any continuance of the trial, but when Mr. Geary "explained [the] need to review the great volume of discovery, [Defendant] relented." Doc. 1322-1; *see also* Docs. 244, 251, 289, 526, 547, 693 (granting continuances of the indictment and trial). As to the delayed indictment, it is unclear how Mr. Geary's conduct constituted deficient performance. Further, even if counsel agreed to a later indictment or trial without Defendant's permission, Defendant has not shown a breach of attorney-client privilege or prejudice, especially considering the Court would not have forced an early trial for a case with dozens of defendants and tens of thousands of pages of discovery. Similarly, Defendant's argument about his uncontested arraignment on the second superseding indictment, Docs. 601, 834, is conclusory and meritless. *See Fisher*, 38 F.3d at 1147.

**2. Failure to properly advise Defendant about his plea and guidelines range**

Defendant next argues that Mr. Geary failed to properly advise him about his plea, particularly the applicable Sentencing Guidelines range and dates in the agreement. Doc. 1207, at 3–4 ("I was told that I was going to receive a lesser sentence than 71–87 months by my attorney, that's why I signed . . . ."); Doc. 1315, at 1. Defendant cannot claim ineffective assistance concerning his first plea because he was pro se and the Court allowed him to withdraw it, thereby eliminating potential prejudice. *McKaskle*, 465 U.S. at 177 n.8, 183; *Dotson*, 28 F. App'x at 802.

As to the second plea, at which Mr. Geary began representing Defendant formally that same morning, the record directly refutes Defendant's claim. *See* Doc. 1072. Defendant checked "yes" to the question in his plea petition, "Do you know the sentence you will receive is solely a matter for the judge to decide?" Doc. 1074, at 4; *see also* Change of Plea Transcript, Doc. 1322-2, at 2 ("THE COURT: You understand -- do you understand the sentence you will receive is solely a matter within the control of the judge? . . . THE DEFENDANT: Yes, your honor."). Defendant also acknowledged that the maximum sentence was twenty years imprisonment and that the Court could sentence him above or below the Sentencing Guidelines range. *Id.* at 4, 7. In consulting with Defendant, Mr. Geary "read slowly aloud in their entirety both the plea agreement and the petition to enter plea of guilty and offered explanations throughout." Doc. 1322-1, at 1. Mr. Geary maintains that he answered all of Defendant's questions and told him that the sentence was solely in the judge's discretion. *Id.* at 1–2. The Court is satisfied with Mr. Geary's performance throughout the plea process. Regardless, if Mr. Geary committed a "miscalculation or erroneous sentence estimation," such errors do not qualify as "constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). Moreover, Defendant has not shown "a reasonable probability that," but for Mr. Geary's conduct, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### 3. Failure to investigate Defendant's case or perform "certain pretrial functions"

Defendant alleges a general failure to investigate Defendant's case or perform pretrial functions. Doc. 1207, at 2; Doc. 1315, at 1. "[W]e are not required to fashion Defendant's

arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *Fisher*, 38 F.3d at 1147. The Court cannot test counsel's adequacy without specific allegations. And Defendant's baseless citation of four cases does not cure this insufficiency. *See* Doc. 1207, at 2.

Nonetheless, the record reflects that Mr. Geary offered ample pre-trial assistance to Defendant, but Defendant merely disagreed with the viability of certain strategic choices, leading him to exercise his right to proceed pro se. Doc. 1207, at 2; *see* Doc. 487; Doc. 1322-1; *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) ("[D]efendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.").

**4. Failure to suppress the "ghost heroin"**

It is unclear if Defendant is challenging Mr. Geary's failure to file a pre-trial motion to suppress or to his alleged failure to object to the heroin considered for plea and sentencing purposes. *See* Doc. 1207, at 2 ("My attorney could have had the (ghost) heroin dismissed from my case."); Doc. 1315, at 1. If the former, the claim became moot when Defendant represented himself and pled guilty.[3] If the latter, Defendant cannot show deficient performance or prejudice because he stipulated to the drug quantity during his second plea, then at the sentencing stage Mr. Geary *did* object to the drug quantity; the Court overruled the objection because it did not affect the applicable Sentencing Guidelines range. Plea

---

[3] The Court does not suggest, as the Government does, that Defendant somehow lost any preexisting ineffective assistance claim once he started representing himself. *See* Doc. 1322. Defendant's burden to show prejudice did become more difficult, however, because counsel's failure to file a certain motion can typically be rectified later with a pro se filing.

9

Agreement, Doc. 1075, at 5, 10; Presentence Investigation Report, Doc. 1152, at 30; Sentencing Transcript, 1322-3, at 2.

**5. Failure to cross-examine the Government's witness at the preliminary hearing**

Defendant fails to show prejudice from a failure to "cross-examin[e] the federal agent in [the] preliminary" hearing. Doc. 1315, at 1; *see* Doc. 1207, at 3. Defendant omits not only what questions Mr. Geary should have asked at the hearing, but also how the answers would have impacted his pre-trial detention or the ultimate outcome of his case.

**6. Failure to investigate the wiretap evidence**

As with his suppression argument, Defendant was responsible for investigating the wiretap evidence because he represented himself—Defendant cannot waive his right to counsel and then complain when the result does not turn out in his favor. Doc. 1207, at 2–3; Doc. 1315 at 1–2; *see McKaskle*, 465 U.S. at 177 n.8, 183; *Dotson*, 28 F. App'x at 802. Even if he could show deficient performance during Mr. Geary's formal representation, prejudice is lacking because Defendant actually investigated and challenged the wiretap evidence, but pled guilty before the Court ruled on his motions. *See* Defendant's Motions, Docs. 843–44, 851–52, 866; Doc. 1301 (denying co-defendants' motions to challenge the same wiretaps).

**7. Failure to investigate affidavits**

The Court rejects Defendant's claim that Mr. Geary failed to investigate the criminal complaint and wiretap affidavits for the same reasons as above regarding his alleged failure to investigate wiretap evidence. Doc. 1207, at 2; Doc. 1315, at 2; *see also* Doc. 1322-1, at 2. Defendant has not shown deficient performance or prejudice.

### 8. Failure to "explain stuff" or advise what motions to file

Defendant also fails to show ineffective assistance by Mr. Geary's alleged failure to "explain stuff" or advise what motions to file. Doc. 1207, at 2; Doc. 1315, at 2; *see also* Doc. 457. Mr. Geary maintains that during his 31 times conferring with Defendant, his attempts to discuss evidence and procedure with Defendant were complicated by Defendant's insistence that his ideas and legal knowledge were better than Mr. Geary's. Doc. 1322-1, at 1–2. Mr. Geary also "offered explanations throughout" review of the plea documents. Doc. 1322-1, at 1. Even assuming Defendant's account of Mr. Geary's inadequate representation is true, Defendant fails to show prejudice.

### 9. Counsel did not "care about [his] well being" or "try[] to fight for him"

Defendant has repeatedly claimed that Mr. Geary did not "care about [his] well being" or whether he ended up in prison, and Mr. Geary did not "try[] to fight for him." Doc. 1207, at 3; Doc. 1315, at 2; *see also* Docs. 457, 479, 695, 1285. Beyond Defendant's threadbare allegations, the Court finds no evidence in the record for this contention. Mr. Geary denied that he "told Mr. Davis he could not beat the government," "crack[ed] jokes at Mr. Davis's expense," demeaned Mr. Davis, or indicated that he "did not care if [Mr. Davis] went to prison." Doc. 1322-1, at 2. Counsel consulted often with Defendant and offered to file various motions, but Defendant disagreed with his approach. *See id.* at 1–2; Doc. 487. Defendant's claim therefore appears grounded in the Court's refusal to appoint the attorney of his choosing. *See* Docs. 457, 479. But "the right to counsel does not guarantee that a criminal defendant will be represented by a particular attorney." *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011). *Strickland* dictates "a strong presumption that

11

counsel's conduct [fell] within the wide range of reasonable professional assistance." 466 U.S. at 689. Defendant has not overcome this presumption, nor has he established counsel's material impact on his decision to plead guilty. Thus, Mr. Defendant's ineffective assistance of counsel claims lack merit.

### III. Conclusion

The Court denies the Motion on the merits, meaning that Mr. Davis is entitled to a Certificate of Appealability ("COA") under Rule 11(a) of the Rules Governing Section 2255 Cases in U.S. District Courts only if he demonstrates "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing 28 U.S.C. § 2253(c)(2)). Because Mr. Davis has not established prejudice from Mr. Geary's conduct to the outcome of his case, he is not entitled to a COA. Mr. Davis may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22 if he wishes to appeal the Court's ruling.

Defendant's request for an extension to reply to the Government's response to his Motion (Doc. 1596) and his Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Doc. 1207) are hereby DENIED.

IT IS SO ORDERED this 21st day of June, 2018.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE